**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| RAYMOND WALLACE | ) | |
| | ) | |
| Petitioner, | ) | Criminal Action No.: 2:10-150-PMD |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | **ORDER** |
| | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Raymond Wallace, ("Petitioner" or "Wallace") a *pro se* prisoner presently in the custody of the Federal Bureau of Prisons, seeks to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (the "motion to vacate"). The Government filed a motion to dismiss, or in the alternative a motion for summary judgment, and Petitioner replied. The Court has thoroughly reviewed the record and finds the motions suitable for disposition without an evidentiary hearing or oral argument. The Court denies Petitioner's motion to vacate and grants the Government's motion for summary judgment for the reasons discussed below.

**BACKGROUND**

Wallace manufactured counterfeit business checks and attempted to use them as legitimate payroll checks. He recruited others to use the checks at local businesses and banks. Wallace also purchased genuine birth certificates and Social Security cards from others. He gave these birth certificates and Social Security cards to his recruits so they could use the identifying information thereon to obtain identification cards from the DMV. These fraudulent identification cards, which contained Wallace's (or a recruit's) picture, but other persons' names, were used to open bank accounts. Wallace then deposited counterfeit business checks into these bank

1

accounts for subsequent withdrawal via ATM machines. He was the leader of the operation—bought the cards, gave the orders, and kept half the money obtained by his recruits.

Authorities first learned of the conspiracy and identity theft when counterfeit Federal Reserve notes were traced to Wallace after questioning a Dustin Miles ("Miles"). Miles told Secret Service agents that Wallace gave him the counterfeit bills and then asked him to open two bank accounts and hand over all the account information. Miles identified Wallace on a bank surveillance photograph that shows Wallace depositing a fraudulent check drawn on an account opened by Miles. Wallace denies giving Miles any counterfeit bills. Archie Darby, one of Wallace's codefendants, told police that he introduced Wallace to Miles and had also driven Wallace to several banks in furtherance of the conspiracy.

Secret Service agents also traced a counterfeit check to Teena Cartwright ("Cartwright"), another codefendant. She admitted to authorities that, at Wallace's direction, she opened a bank account with a fake driver's license Wallace had given her and deposited at least eight counterfeit checks which he provided. She confirmed that Wallace paid people for their real birth certificates and Social Security cards and used them to obtain drivers' licenses in those real names.

Authorities also spoke with a Domain Nelson ("Nelson"), who was caught using counterfeit checks. Nelson admitted that the checks came from Wallace and identified him as a friend of Stanley Lessington ("Lessington"). Wallace and Lessington were codefendants in a previous federal counterfeit check case. Wallace was on supervised release at the time of this offense.

## PROCEDURAL HISTORY

On February 10, 2010, a five-count indictment was returned against Wallace, Darby, and Cartwright. Wallace was named in Count One, conspiracy to make and pass counterfeit business checks in violation of 18 U.S.C. § 513(a), Count Three, identity theft in violation of 18 U.S.C. § 1028(a)(7) and (b)(1)(D), and Count Five, aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1) and (2).

On May 3, 2010, Petitioner entered into a plea agreement, in which he pled guilty to Counts One and Five. Count Three was dismissed on a motion by the United States. On November 16, 2010, Petitioner was sentenced to a term of incarceration for 48 months.

Petitioner now moves the Court, pursuant to 28 U.S.C. § 2255, to vacate, set aside, or correct his sentence, alleging that his attorney provided ineffective representation.

## STANDARD OF REVIEW

To grant a motion for summary judgment, the court must find that "there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). The judge is not to weigh the evidence but rather must determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). All evidence should be viewed in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir.1991).

In applying this standard, the court is mindful that *pro se* complaints are held to a less stringent standard than those drafted by attorneys, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), and a federal district court is charged with liberally construing a complaint filed by a

*pro se* litigant to allow the development of a potentially meritorious case. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980). The requirement of liberal construction, however, does not mean that the court can ignore a clear failure in pleading to allege facts which set forth a claim currently cognizable in a federal district court. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir.1990).

## ANALYSIS

In moving pursuant to 28 U.S.C. § 2255, Petitioner states three grounds in support of his motion to vacate. These are summarized as follows:

(1) (A) Counsel was ineffective for failing to object to the Aggravated Identity Theft conviction under *Flores-Figueroa v. United States*, 129 S.Ct. 1886 (2009).

(B) Counsel was ineffective for failing to object to the two-level enhancement imposed for his leadership role in the conspiracy and aggravated identity theft.

(2) Counsel was ineffective for failing to object to the Court's use of the 2009 edition of the Sentencing Guidelines, instead of the 2008 edition, in violation of the ex post facto clause.

(3) Counsel was ineffective for failing to object to the use of criminal history points, specifically:

(A) 3 points for his Failure to Stop for a Blue Light conviction;

(B) 3 points for his Crime Against a Federally Chartered Financial Institution and Obtaining Goods By False Pretenses convictions; and

(C) 6 points for his prior convictions listed in ¶¶ 24-25 of the pre-sentence report ("PSR").

For the reasons explained below the Court grants the government's motion for summary judgment as to each of the three grounds Petitioner raises.

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). *Strickland v. Washington* states that a meritorious ineffective assistance of

4

counsel claim must demonstrate two things: first, that counsel's performance was deficient; and second, that counsel's deficient performance prejudiced the defense. 466 U.S. 668, 687 (1984).

To establish the first prong, the defendant must show "that counsel made errors so serious that [he or she] was not functioning as the 'counsel' guaranteed [to] the defendant by the Sixth Amendment." *Id*. A court's evaluation of counsel's performance under this standard must be "highly deferential," so as to not "second-guess" the performance. *Id.* at 689. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks and citation omitted); *see also Bowie v. Branker*, 512 F.3d 112, 119 n.8 (4th Cir. 2008); *Fields v. Att'y Gen. of Md.*, 956 F.2d 1290, 1297–99 (4th Cir. 1992); *Roach v. Martin*, 757 F.2d 1463, 1467 (4th Cir. 1985).

In order to satisfy the second prong of *Strickland*, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability" has been defined as "a probability sufficient to undermine confidence in the outcome." *Id.* Petitioner has the burden of showing that trial counsel was ineffective under this standard. *Smith v. North Carolina*, 528 F.2d 807, 809 (4th Cir. 1975) (citing *Johnson v. Zerbst*, 304 U.S. 458 (1938)).

**Ground I:**

    A.    **Aggravated Identity Theft Conviction**

Petitioner argues that his attorney, Thaddeus Doughty, provided ineffective assistance of counsel for failing to object to the Aggravated Identity Theft conviction under *Flores-Figueroa*

5

*v. United States*. In that case, the Supreme Court held that the Aggravated Identity Theft statute[1] "requires the Government to show that the defendant knew that the means of identification at issue belonged to another person." *Flores-Figueroa*, 129 S.Ct. at 1894.

At the plea hearing, Wallace admitted to knowingly possessing identification documents of other persons. *See* Plea Hrg. Tr. 19:11-21. Yet, despite his admission, Petitioner now claims the Government failed to provide proof that the elements of the crime were included in the plea agreement. Petitioner argues that his attorney should have known of this failure, and therefore his innocence, and was ineffective for not objecting to the 24 months, consecutive sentence imposed.

Petitioner chose to waive his right to a jury trial, where the government would have been required to show that Petitioner knew that the means of identification belonged to another person. Instead, he chose to plead guilty and admitted to knowingly using identification documents of another. Therefore, Petitioner's claim that his counsel was ineffective for failing to object under *Flores-Figueroa*, fails.

### B. Leadership Role

Petitioner also claims counsel was ineffective for failing to object to the two-level enhancement he received for his leadership role in the conspiracy and aggravated identity theft. A petitioner bears the burden of proving that the failure to object was unreasonable under prevailing professional norms. *See United States v. Ailsworth*, 206 F. Supp. 2d. 1148, 1151 ("The reasonableness of counsel's performance is to be evaluated from counsel's perspective . . . in light of all the circumstances, and the standard of review is highly deferential.").

---

[1] 18 U.S.C. § 1028A

Petitioner's counsel's failure to object was clearly not deficient, such that Petitioner was prejudiced as a result. There is no reasonable probability that an objection would have been sustained because the Government provided abundant proof of Petitioner's leadership role in committing the fraud.[2] For instance, Wallace's prior conviction for check fraud evidences his experience, willingness, and expertise to lead and organize a fraudulent scheme that operated just like the scheme in this case. Additionally, codefendants Darby and Cartwright stated at their respective plea hearings that they agreed with the facts showing Wallace's leadership role, as set forth in the Indictment. *See* Wallace's Plea Hrg. Tr. 20:22-24. Most significantly, Petitioner admitted to his role as a leader and organizer when he agreed with the factual summary offered by the Government during his plea hearing. *See* Plea Hrg. Tr. 22:17-25 to 23:1-3.[3] Under the circumstances, counsel's failure to object was clearly within the objective, professional standard of reasonableness guaranteed by the Sixth Amendment. Therefore, Petitioner's claim is denied.

**Ground II:**

Petitioner claims counsel provided ineffective assistance for failing to object to the use of the 2009 Sentencing Guidelines, as opposed to the 2008 edition, in violation of the ex post facto clause. Petitioner alleges that if his attorney had made a reasonable investigation into the facts of the case, he would have objected to the use of the 2009 edition.

---

[2] To the extent Petitioner claims that the government failed to provide sufficient proof of his leadership role to support the two-level enhancement, the Court finds that claim procedurally barred because non-constitutional claims that could have been raised on appeal, but were not, usually may not be asserted in collateral proceedings. *See United States v. Emanual*, 869 F.2d 795, 796 (4th Cir. 1989) (holding that a § 2255 petition was not properly before the court when the petitioner only raised a non-constitutional issue that he could have appealed).

[3] The Government offered: Wallace "manufactured the counterfeit business checks;" "purchased birth certificates and Social Security cards from other persons;" and "provided these birth certificates and Social Security cards to [his codefendants] . . . to open bank accounts and pass counterfeit business checks."

"Generally, a sentencing court applies the Guidelines Manual that is in effect on the date of sentencing." *United States v. Lugo*, 131 Fed. Appx. 901, 908 n.6 (4th Cir. 2005); *see* USSG § 1B1.11(a) (2004)." But, if the court "determines that use of the Guidelines Manual 'in effect on the date that the defendant is sentenced would violate the ex post facto clause of the United States Constitution,'" the court must instead apply "the Guidelines Manual 'in effect on the date that the offense of conviction was committed.'" *Id.* (*citing Elliott v. United States*, 332 F.3d 753, 767 n.12 (4th Cir. 2003). To violate the ex post facto clause, a law must inflict "a greater punishment, than the law annexed to the crime, when committed." *Lynce v. Mathis*, 117 S.Ct. 891, 895 (1997).

In this case, the relevant provisions are exactly the same in both the 2008 and 2009 editions of the Sentencing Guidelines.[4] As the PSR notes, the 2009 edition was used because it is no more punitive than the 2008 edition. *See* ¶ 34 of the PSR. Therefore, there is no ex post facto violation, and the Court finds that an objection by counsel would have been groundless. Accordingly, Petitioner's claim is denied.

**Ground III:**

Petitioner claims counsel was ineffective for failing to object to the use of criminal history points, specifically: (a) 3 points for his Failure to Stop for a Blue Light conviction; (b) 3 points for his Crime Against a Federally Chartered Financial Institution and Obtaining Goods By False Pretenses convictions, and (c) 6 points for his prior convictions listed in ¶¶ 24-25 of the PSR.

---

[4] In computing Petitioner's Offense Level, both editions provide for a Total Offense Level of 10.

8

### A. Failure to Stop for a Blue Light

Petitioner argues counsel was ineffective for failing to object to the 3 points awarded for his Failure to Stop for a Blue Light conviction because the crime was declared "non-violent" in *United States v. Rivers*, 595 F.3d 558 (4th Cir. 2010). In *Rivers*, the Fourth Circuit held that the blue light statute does not qualify as a "violent felony" under the Armed Career Criminal Act (ACCA) and remanded the case for resentencing under the guidelines of the ACCA. *Id.* at 565. Petitioner claims that the 3 points should be removed because his blue light conviction is now considered a non-violent felony under the ACCA, and his counsel was ineffective for failing to object on this ground.

The Court finds that Petitioner's claim is without merit. First, the holding in *Rivers* does not stand for the proposition argued by Wallace because that case does not apply to a defendant's criminal history category under the Sentence Guidelines. Instead, *Rivers* dealt with whether a blue light conviction qualifies as a predicate offense for purposes of the ACCA, a matter not relevant to Petitioner's case. Second, notwithstanding Petitioner's blue light conviction, the 3 points are proper. On the date that he was sentenced for his blue light conviction, Petitioner was also sentenced to 5 years imprisonment for committing Grand Larceny. Under the Guidelines, Petitioner's 5 year sentence provides an independent basis for awarding the 3 points in ¶ 24 of the PSR. *See* U.S.S.G. § 4A1.1(a) ("Add 3 points for each prior sentence of imprisonment exceeding one year and one month."). Therefore, the Court denies Petitioner's claim because his counsel's failure to object to the 3 points was professionally reasonable as an objection would have been overruled.

### B.    Crime Against a Federally Chartered Financial Institution/Obtaining Goods By False Pretenses

Petitioner also argues counsel was ineffective for failing to object to the 3 points awarded in ¶ 26 of the PSR because he did not serve any time for these two charges, and the charges were consolidated for one judgment. According to Wallace, his sentence for the Crime Against a Financial Institution was "Nolle prossed," further that he only "received 4 months suspended sentence of probation which was suspended, rather than sentence imposed" for his False Pretenses crime. In sum, he argues that his counsel should have objected because no points should be awarded for these crimes.

Under *Strickland*, Petitioner must show, with reasonable probability, that if his counsel had objected, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. The PSR states that Wallace's sentence for False Pretenses was suspended from 3 years to <u>4 months imprisonment</u> and 3 years probation. Under the Guidelines, 2 points should be awarded for Petitioner's sentence of 4 months imprisonment. *See* U.S.S.G. § 4A1.1(b) ("Add 2 points for each prior sentence of imprisonment of at least sixty days not counted in (a)."). However, the PSR also states that on February 3, 2005, Petitioner's probation was <u>revoked</u> in full. Revocations of probation are covered under § 4A1.2(k), which states that if the sentence originally imposed exceeded one year and one month, then the maximum 3 points should be assigned. Petitioner was originally sentenced to 3 years imprisonment for the False Pretenses crime. Therefore, the Court finds that 3 points were properly awarded under the Guidelines because Petitioner's original sentence exceeds one year and one month.

For the reasons just explained, any objection by counsel to the 3 points would have been meritless. Additionally, according to the Sentencing Table, 13 or more points place a defendant in the highest Category. So, even if the 3 points were removed—dropping Petitioner's total

10

criminal history score to 14 points—the sentence would be the same. Thus, Petitioner cannot show prejudice as required under *Strickland*, and his claim is denied.

### C. Prior Convictions

Lastly, Petitioner claims counsel was ineffective for failing to object to the separation of prior convictions for sentencing purposes because the convictions were part of the same common scheme. Petitioner argues that because these convictions, listed in ¶¶ 24-25 of the PSR, were part of a single offense, only 3 points should be awarded under the Guidelines, not 6 points.

U.S.S.G § 4A1.2(a)(2) states:

> Prior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense.). If there is no intervening arrest, prior sentences are counted separately unless (A) the sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day.

Here, Petitioner was sentenced on the same day for convictions listed in paragraphs 24 and 25. However, the second part of the rule is only applicable if there is no intervening arrest. As the PSR indicates, Petitioner was arrested on June 18, 1999 for the crimes listed in ¶ 24, and he committed the crimes listed in ¶ 25 on July 18, 1999. Since he was arrested for the first offense prior to committing the second offense, Petitioner's prior sentences should be counted separately.

Petitioner's claim is contradicted by the record because his former counsel did in fact object on this ground, and for the reasons just explained, the objection was properly overruled. *See* Add. to PSR ¶ 3.[5] Furthermore, counsel cannot be considered deficient under *Strickland* simply because the objection was overruled. *See Wicks v. United States*, No. 2:03CR079, 2008

---

[5] "The defendant objects to paragraphs 24 and 25 of the presentence report regarding the defendant's criminal history computation. The defendant pled to these offenses on the same day and the point calculation should be 3, not 6. His criminal history category should be adjusted accordingly."

WL 5046355, at *5 (N.D. Miss. Nov. 24, 2008) (holding on identical grounds). Therefore, Petitioner's claim is denied.

In his reply, Petitioner conveniently argues for the first time that his counsel was ineffective for failing "to file a direct appeal . . . after the district court overruled [the] objection." Pet'r's Reply Br. 5. The Court disagrees because Petitioner cannot attempt to amend his petition in his reply brief. *See Caban v. United States*, No. 2:06-1208, 2010 WL 2232203, at *2 (D.S.C. June 02, 2010) (finding that "Petitioner cannot attempt to amend his petition in his reply brief"). Furthermore, Petitioner fails to allege that he requested his attorney to file a direct appeal, and at the plea hearing, he stated that his counsel had done everything he asked him to do. *See* Plea Hrg. Tr. 5:15-21. Due to the strong presumption in favor of effective assistance of counsel, the Court finds that Respondent is entitled to summary judgment. *See Johnson v. United States*, No. 2:08-CR-00139, 2011 WL 4483127, at *4 (D.S.C. Sept. 28, 2011) (granting summary judgment because petitioner does not allege that he requested a direct appeal, and at the plea hearing, petitioner stated he was satisfied with his attorney's performance).

## CONCLUSION

Based on the foregoing, it is **ORDERED** that Petitioner's motion is hereby **DENIED**. It is **FURTHER ORDERED** that a certificate of appealability is **DENIED** because Petitioner has failed to make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Accordingly, it is **ORDERED** that the Government's motion for summary judgment is **GRANTED**.

AND IT IS SO ORDERED.

PATRICK MICHAEL DUFFY
United States District Judge

**November 7, 2011**
**Charleston, South Carolina**